**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
LAVERNA KENNEY,                                  :
                                                 :
               **Plaintiff,**          :
                                                 :   **06 Civ. 5770 (HB)**
    - against -                               :
                                                 :   <u>**OPINION & ORDER**</u>
**NEW YORK CITY DEPARTMENT OF EDUCATION** :
                                                 :
               **Defendant.**          :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

On July 31, 2006, Laverna Kenney ("Kenney" or "Plaintiff") filed a complaint (the "Complaint") against her employer, the New York Department of Education (the "DOE" or "Defendant") alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* ("Title VII"). Plaintiff alleges that Defendant improperly terminated her from service as a probationary attendance teacher and denied her re-employment as a teacher in 2005 and 2006 on the basis of her race. The DOE now moves this Court for summary judgment and dismissal of the Complaint. Following an extensive oral argument on September 11, 2007, for the reasons stated below, Defendant's motion is GRANTED and the Complaint is dismissed in its entirety.

                      **I.**                **FACTUAL BACKGROUND**

**A.**    **Plaintiff's Employment with the DOE**

From February 1998 to July 2000, Kenney, an African American female, was employed by the DOE as a probationary attendance teacher. On June 21, 2000, Kenney received an overall "Unsatisfactory" rating on her "Annual Professional Performance Review and Report on Probationary Service of Pedagogical Employee" (the "Performance Review"). Affidavit of Laverna Kenney (the "Kenney Aff."), Ex. 17, July 16, 2007. The Performance Review is

1

based on four categories[1] with a total of thirteen subcategories. Id. Kenney's Performance Review indicates that her performance for the period September 7, 1999 through June 28, 2000 was "Unsatisfactory" in eleven of the thirteen subcategories.[2] Id.

On June 21, 2000, Michael Mirakian ("Mirakian"), District Attendance Director and Plaintiff's supervisor, notified Plaintiff of her performance rating and advised her of his recommendation to Richard Organisciak ("Organisciak"), Superintendent of the Alternative, Adult and Continuing Education School and Programs of the DOE, that her probationary period be discontinued. Declaration of Kevin Madden in Supp. of Def.'s Mot. for Summ. J. (the "Madden Decl."), Ex. D, July 10, 2007. Mirakian explained that Kenney's unsatisfactory performance review was due, in part, to ineffective communication with her supervisors, the improper closure of attendance cases without sufficient investigation (which, according to Mirakian, "could have subjected not only Kenney but the Board of Education to possible legal actions"), her failure to follow DOE procedures, inefficient time management, and insufficient progress in remedying these previously identified "deficiencies." Id.

**B.     Plaintiff's Termination of Employment**

On June 22, 2000, Superintendent Organisciak informed Plaintiff that he would review and consider her probationary status and notify her of his decision. Madden Decl., Ex. E. On July 24, 2000, Organisciak notified Plaintiff that her probationary service would be discontinued. Madden Decl., Ex. F. Shortly thereafter, on September 21, 2000, the DOE's Chancellor's Committee reviewed and concurred with Organisciak's determination to discontinue Plaintiff's probationary service, and on October 26, 2000, Organisciak informed

---

[1] The four categories are: "Personal and Professional Qualities," "Pupil Guidance and Instruction," "Classroom or Shop Management," and "Participation in School and Community Activities."
[2] Kenney scored a "Satisfactory" rating in the two remaining subcategories: "personal appearance" and "voice, speech and use of English." Kenney Aff., Ex. 17.

2

Plaintiff that he reaffirmed his decision to terminate her employment as a probationary attendance teacher. Madden Decl., Exs. G and H.

### C. Background to Plaintiff's Failure to Hire Claim

Plaintiff alleges that on July 6, 2005 (five years later), Karen Marino ("Marino"), Deputy Director of Human Resources for Regions 4 and 5, called her to schedule an interview for a teaching position with the DOE on July 11, 2005. Pl.'s Reply to Def.'s 56.1 Statement of Undisputed Facts ¶ 14. However, the DOE alleges that such a call never took place, that Plaintiff visited its Office of Human Resources for Regions 4 and 5 (the "Office") without an appointment, and that Marino was unavailable to meet with Plaintiff because of a previously scheduled meeting. Declaration of Karen Marino (the "Marino Declaration") ¶ 3. Additionally, the DOE maintains that, as a matter of course, Marino does not meet with teachers seeking employment. Id. ¶ 4. Plaintiff made a second visit to the Office on March 8, 2006, at which time Marino met with her. Id. ¶ 5. During the meeting, Plaintiff expressed her belief that it was the Office's responsibility to find a placement for her. Id. Marino, upon review of Kenney's file, informed Plaintiff that her probationary employment as an attendance teacher had been discontinued more than five years ago and advised her to consult with her union. Id. ¶¶ 5-6.

Plaintiff made a third visit to the Office on October 18, 2006 and met with Marino and Walter Wade, a DOE Human Resource Partner. Id. ¶ 7. Plaintiff reiterated her belief that it was the Office's responsibility to find her employment and insisted that the DOE find her a placement as an attendance teacher. Id. Marino examined Plaintiff's New York State teacher's certification to determine her eligibility for employment and informed Plaintiff that her certification had expired on January 31, 2000. Id. Marino then advised Plaintiff that,

3

without a valid teacher's certification, she failed to meet minimum eligibility requirements for "employment in *any* licensed teaching position within the New York City public school system." Id. ¶ 9 (emphasis added).

### D. Procedural Background to Plaintiff's Joint Charge of Discrimination

On October 5, 2005, Plaintiff filed a joint charge of race discrimination with the New York State Division of Human Rights (the "SDHR") and the United States Equal Employment Opportunity Commission (the "EEOC"). Madden Decl., Ex. I. Plaintiff alleged in these complaints that she was subjected to "unlawful discriminatory actions" on July 11, 2005 when Marino failed to meet with her and that she was discriminated against based on race when she failed to receive job offers or information from the DOE that would assist with her reinstatement. Id. On March 14, 2006, the SDHR issued a "Determination and Order of Dismissal for Administrative Convenience" (the "Determination and Order") dismissing Plaintiff's complaint on the basis of "administrative inconvenience" because "complainant intend[ed] to pursue this matter by litigation in Federal Court." Id., Ex. K. On May 2, 2006, the EEOC issued a "Dismissal and Notice of Rights" (also known as a "right to sue letter") that closed Plaintiff's case and permitted her to file suit in federal court. Id., Ex. L. On or about July 31, 2006, Plaintiff commenced the instant action in this Court.

## II.   STANDARD OF REVIEW

On a motion for summary judgment, the movant must establish that there is no genuine issue of material fact and that the undisputed facts are sufficient to warrant judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e). A disputed issue of material fact alone is insufficient to deny a motion for summary judgment. The issue must be "material to the outcome of the litigation," and backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, the court resolves all ambiguities and draws all inferences in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

Employment discrimination cases raise special issues on summary judgment. From the outset, "[i]n employment discrimination cases where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate." Bhaduri v. Summit Sec. Servs., No. 05 Civ. 7024, 2006 U.S. Dist. LEXIS 79830, at *11-12 (S.D.N.Y. Nov. 2, 2006) (Baer, J.) (citation omitted). Consequently, affidavits and deposition testimony must be scrutinized for circumstantial evidence which, if believed, would support a finding of discrimination. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). At the same time, Plaintiff must still produce sufficient evidence in support of her claim such that a rational juror could find in her favor. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Nevertheless, "[e]ven courts mindful of the fact that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated have nonetheless granted summary judgment . . . where the plaintiff has provided *no* indication that *any* evidence exists that would permit the trier of fact to draw a reasonable inference of [discriminatory animus]." Johnson v. Conn. Dep't of Corr., 392 F. Supp.2d 326, 334 (2005) (citing Meiri v. Dacon, 759 F.2d at 997) (emphasis added). Further, the fact that Kenney

5

brings this action *pro se* means that the Court must construe her papers liberally and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted).

### III.   DISCUSSION

According to the burden-shifting analysis set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, a plaintiff alleging race discrimination in violation of Title VII[3] must first establish a *prima facie* case by showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent. 411 U.S. 792, 802 (1973). See also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, (1993); Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). On summary judgment, the plaintiff's burden of proof at the *prima facie* stage is *de minimus*. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).

If the plaintiff establishes a *prima facie* case, she "creates a presumption that the [defendant] unlawfully discriminated, and the burden of going forward will shift to the [defendant] to proffer a [legitimate] nondiscriminatory reason for its action." James v. New York Racing Assn., 233 F.3d 149, 154 (2d Cir. 2000) (citation omitted). Thereafter, if the defendant provides evidence of a legitimate nondiscriminatory reason for its employment decision, plaintiff may still prevail if she provides "admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Howley v. Town of Stratford, 217 F.3d 141, 150

---

[3] The McDonnell Douglas test applies where a plaintiff alleges race discrimination in the context of a termination, failure to hire, or failure to promote. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Therefore, the Court applies this test to Kenney's termination of employment and failure to hire claims.

6

(2d Cir. 2000).  Even if the plaintiff can establish a *prima facie* case, however, "the plaintiff is not entitled to judgment unless he shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination."  Id.

The DOE does not dispute that Kenney is an African American and thus a member of a protected racial class, nor does it dispute the fact that Kenney suffered adverse employment actions when it discharged her from probationary service and when it denied her reemployment as a teacher in 2005 and 2006.  Def.'s Reply Mem. of Law in Supp. of its Mot. for Summ. J. 1.  The DOE does, however, dispute Kenney's assertion that she has established the second and fourth prongs for both claims—respectively, that she was qualified for the attendance teacher position and that the DOE's actions were motivated by a discriminatory animus.

### A. Termination of Employment

Before the Court can explore the remaining two prongs of Kenney's termination of employment claim, it must first address the DOE's threshold argument that Kenney's termination claim is time-barred.  Title VII's 300-day statute of limitations period begins after the commission of the "alleged unlawful practice." 42 U.S.C. § 2000e-5(e)(1).  See Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2167 (2007); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).  In the case at bar, Kenney's alleged unlawful termination occurred on July 24, 2000 and she filed her joint claim with the SDHR and the EEOC on October 5, 2005, well over 300 days later.  Plaintiff's argument that her claim is not time-barred because the EEOC failed to check the time-barred box on her Dismissal and Notice of Rights is unavailing because it is the date of *occurrence* of the alleged unlawful practice that triggers the clock and not the date on which Plaintiff filed her complaint with the

EEOC.  See, e.g., National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("'Shall' makes the act of filing a charge within the specified time period mandatory. 'Occurred' means that the practice took place or happened in the past. The requirement, therefore, that the charge be filed 'after' the practice 'occurred' means that a litigant has up to 180 or 300 days *after* the unlawful practice happened to file with the EEOC.") (citing 42 U.S.C. § 2000e-5(e)(1)).  Furthermore, the fact that the EEOC did not indicate that the claim was time-barred on the Dismissal and Notice of Rights is irrelevant because neither the EEOC nor this Court has discretion to consider a time-barred claim.  See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34 (1998).

Therefore, unless Kenney can establish that one of the two exceptions to the 300-day statute of limitations applies (either the existence of a continuing violation or a hostile environment), she has no Title VII claim for conduct occurring before December 9, 2004 (the date 300 days prior to the filing of her claim).  Allah v. City of N.Y. Dep't of Parks & Rec., 47 Fed. Appx. 45, 48 (2d Cir. 2002).  Kenney did not raise either argument in her papers in support of tolling the statute of limitations.   Nonetheless, she did allude, albeit only peripherally, to a continuing violation during oral argument:

> THE COURT: I mean, do you have some additional information?  I didn't see anything that supports the position that this is a continuing violation. Continuing violations don't just happen.
> KENNEY: Well, I was offered a hire from Ms. Marino at Region 4 and 5, and I don't have it.

Tr. of Oral Argument, Sept. 11, 2007 ("Tr."), 5:10-19.  Plaintiff's supplemental submission to the Court argues in support of a continuing violation by stating that the March 8, 2006 interview with Marino was reported to the EEOC within 300 days.  While this may be relevant to the failure to hire claim, it does nothing to support her argument for tolling the

8

statute of limitations with respect to her July 2000 wrongful termination claim.

Kenney's conclusory allegations that she has suffered from a continuing practice of discrimination by the DOE, without more, are insufficient to trigger a continuing violation exception to the 300-day statute of limitations. "A continuing violation occurs where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Carter v. N.Y. City Dep't of Corr., 7 Fed. Appx. 99, 102 n.2 (2d Cir. 2001) (internal quotation and citation omitted) ("Mr. Carter has not alleged nor pointed to any specific facts that would establish that events after April 7, 1993, when his complaint contends the retaliatory conduct began, were part of a 'discriminatory policy' of DOC."); Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) ("The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests. . . . [M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."), cert. denied, 511 U.S. 1052 (1994)). Therefore, since Kenney filed her joint charge with the EEOC more than 300 days after her termination in July 2000, her termination of employment claim is time-barred and, as a result, the Court need not reach the merits of Plaintiff's *prima facie* arguments with respect to this claim.

**B.    Failure to Hire**

With respect to Plaintiff's failure to hire claim, Kenney fails to establish a *prima facie* case of race discrimination because she has not shown that (1) she met the minimum qualifications to teach in the New York City public school system and that (2) the DOE acted with a discriminatory animus in its decision not to hire her in 2006. Tr., at 8:3-13 (noting that

Ms. Kenney's teaching certificate was invalid as of January 31, 2000); Id. at 8:20-10:13 (noting the requirement of discriminatory animus).

## IV.     CONCLUSION

For the reasons stated above, Kenney's termination claim is time-barred and her failure to hire claim is defeated for failure to establish a *prima facie* case. Therefore, Defendant's motion for summary judgment is granted and the Complaint is dismissed in its entirety.

The Clerk of the Court is instructed to close this case and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**October 20, 2007**

_____
U.S.D.J.

10